MICHAEL J. VARTAIN [SBN 92366]
STACEY L. LEASK [SBN 233281]
**VARTAIN LAW GROUP, P.C.**
601 Montgomery Street, Suite 780
San Francisco, CA 94111-2664
Telephone: [415] 391-1155
Facsimile:   [415] 391-1177

Attorneys for Defendants
GOLDEN GATE SCHOOL OF LAW, and
DEAN ANTHONY NIEDWIECKI

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA
San Francisco Division

| | |
|---|---|
| MORTEZA BENJAMIN RAY KARIMI,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>GOLDEN GATE SCHOOL OF LAW,<br>DEAN ANTHONY NIEDWIECKI, in his<br>official capacity,<br><br>　　　　　Defendants. | Case No.: **3:17-cv-05702-JCS**<br><br>**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**<br><br>Hearing Date:　January 19, 2018<br>Hearing Time:　9:30 a.m.<br>Location:　　　San Francisco Courthouse<br>　　　　　　　Ctrm. G - 15th Floor<br>　　　　　　　450 Golden Gate Avenue,<br>　　　　　　　San Francisco, CA 94102<br>Judge:　　　　Hon. Joseph C. Spero<br>Trial Date:　　Not Yet Assigned.<br>Complaint Filed:　October 3, 2017 |

**ATTACHED DOCUMENT(S):**

1. **DECLARATION OF DEAN ANTHONY NIEDWIECKI;**
2. **DECLARATION OF STEVEN LIND;**
3. **DECLARATION OF DAN DEVOY;**
4. **DECLARATION OF STACEY L. LEASK; and**
5. **EXHIBITS.**

---

**KARIMI vs. GOLDEN GATE SCHOOL OF LAW, ET AL. [USDC-ND # 3:17-cv-05702-JCS]-
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TRO**
S:\Client\106 Golden Gate University\026 Karimi USDC\Pleadings\Plf Motion for TRO\OppositionEG.doc

# TABLE OF CONTENTS

*TABLE OF CONTENTS* ................................................................................................................ i

*TABLE OF AUTHORITIES* ......................................................................................................... ii

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF FACTS ................................................................................................ 1

    A. Golden Gate University, School of Law; and its Prohibited Conduct Policy ........................................................................................................................ 1

    B. Plaintiff's First Four Weeks of Law School. ...................................................... 2

    C. Plaintiff Files the Litigation on October 3, 2017 ............................................... 4

    D. Status of the Disciplinary Process Regarding Plaintiff ..................................... 5

    E. The Official Record of the School Does Not Reflect Any Adverse Action Toward Plaintiff ....................................................................................... 8

    F. The Policy on Interim Suspension ....................................................................... 9

    G. Plaintiff's Motion for Preliminary Injunction .................................................... 9

III. LEGAL ANALYSIS AND ARGUMENT ....................................................................... 11

IV. CONCLUSION ................................................................................................................ 16

**KARIMI vs. GOLDEN GATE SCHOOL OF LAW, ET AL. [USDC-ND # 3:17-cv-05702-JCS]-
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TRO**

S:\Client\106 Golden Gate University\026 Karimi USDC\Pleadings\Plf Motion for TRO\OppositionEG.doc    -i -

# TABLE OF AUTHORITIES

**FEDERAL CASES:**

*Alliance for Wild Rockies v. Cottrell*
632 F.3d 1127 (9th Cir. 2011) ............................................................................................... 14

*Big Country Foods, Inc. v. Board of Education of Anchorage School Dist.*
868 F.2d 1085 (9th Cir. 1989) ............................................................................................... 14

*Boucher v. School Bd. of School Dist. of Greenfield*
134 F.3d 821 (7th Cir. 1998) ................................................................................................. 15

*Campbell Soup Co. v. ConAgra, Inc.*
977 F.2d 86 (3rd Cir. 1992) ................................................................................................... 14

*Caribbean Marine Services Co., Inc. v. Baldrige*
844 F.2d 668 (9th Cir. 1988) ................................................................................................. 14

*Church v. City of Huntsville*
30 F.3d 1332 (11th Cir. 1994) ............................................................................................... 14

*Earth Island Institute v. Carlton*
626 F.3d 462 (9th Cir. 2010) ................................................................................................. 11

*Goldie's Bookstore, Inc. v. Sup.Ct.*
739 F.2d 466 (9th Cir. 1984) ................................................................................................. 14

*Klein v City of San Clemente*
584 F.3d 1186 (9th Cir. 2009) ............................................................................................... 12

*Lockheed Missile & Space Co. v. Hughes Aircraft Co.*
887 F.Supp. 1320 (N.D.Cal. 1995) ........................................................................................ 12

*Lopez v. Brewer*
680 F.3d 1068 (9th Cir. 2012) ............................................................................................... 11

*Los Angeles Memorial Coliseum Comm. v. Nat. Football League, et al.*
634 F.2d 1197 (9th Cir. 1980) ............................................................................................... 11

*Midgett v. Tri-County Metro. Transp. Dist. of Oregon*
254 F.3d 846 (9th Cir. 2001) ................................................................................................. 14

*Mou v. W. Valley College*
2009 U.S. Dist. LEXIS 59615 (N.D. Cal., June 29, 2009) .................................................... 15

*Winter v. Natural Resources Defense Council, Inc.*
555 U.S. 7 (2008) ............................................................................................................. 11, 14

**KARIMI vs. GOLDEN GATE SCHOOL OF LAW, ET AL. [USDC-ND # 3:17-cv-05702-JCS]-**
**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TRO**

S:\Client\106 Golden Gate University\026 Karimi USDC\Pleadings\Plf Motion for TRO\OppositionEG.doc                                                                                  -ii-

1 **STATE STATUTES:**

2 Cal. Code of Civ. Proc. § 45 ............................................................................................................. 13

3 Cal. Code of Civ. Proc. § 47 ............................................................................................................. 13

4 **STATE CASES:**

5 *Campanelli v. Regents of the University of California*
6 44 Cal.App.4th 572 (1996) ............................................................................................................... 13

*Christensen v. Superior Court*
7 54 Cal.3d 868 (1991) ........................................................................................................................ 13

8 *Cole v. Fair Oaks Fire Prot. Dist.*
9 43 Cal.3d 148 (1987) ................................................................................................................. 12, 13

*Cuenca v. Safeway San Francisco Employees Fed. Credit Union*
10 180 Cal.App.3d 985 (1986) .............................................................................................................. 13

11 *Davidson v. City of Westminster*
12 32 Cal.3d 197 (1982) ........................................................................................................................ 13

*Jensen v. Hewlett-Packard Co.*
13 14 Cal.App.4th 958 (1993) ............................................................................................................... 13

14 *Kashmiri v. Regents of University of California*
15 156 Cal.App.4th 809 (2007) ............................................................................................................. 12

*Nygard v. Uusi-Kerttula*
16 159 Cal.App.4th 1027 (2008) ........................................................................................................... 13

17 *Zumbrum v. University of Southern California*
18 25 Cal.App.3d 1 (1972) .................................................................................................................... 12

**KARIMI vs. GOLDEN GATE SCHOOL OF LAW, ET AL. [USDC-ND # 3:17-cv-05702-JCS]-**
**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TRO**

S:\Client\106 Golden Gate University\026 Karimi USDC\Pleadings\Plf Motion for TRO\OppositionEG.doc                                    -iii-

## I.     INTRODUCTION

Golden Gate University opposes the motion of Plaintiff Morteza Benjamin Ray Karimi for a preliminary injunction compelling its School of Law to take him off interim suspension and return him to the first year law school class; to cancel its pending hearing on the disciplinary charges against Plaintiff; and for other preliminary relief[1].

As shown below, Plaintiff cannot satisfy his burden to show a strong likelihood of success on the merits; an irreparable injury if the preliminary relief is not granted; a balance of hardships favoring him; and an advancement of the public interest.

The University thus requests that the motion for preliminary relief be denied in its entirety.

## II.     STATEMENT OF FACTS

**A.     Golden Gate University, School of Law; and its Prohibited Conduct Policy.**

The School of Law is part of the University, a private, not-for-profit, non-government institution of higher education located in San Francisco, California. It confers "juris doctorate" or "JD" degrees, graduate "LL.M." degrees, a joint JD/MBA degree, and Certificates of Specialization in six specialty areas of law. It is fully accredited by the Council of the Section of Legal Education and Admissions to the Bar of the American Bar Association (ABA) and the Committee of Bar Examiners of the State of California. Declaration of Anthony Niedwiecki ("Niedwiecki Decl."), ¶¶6-7; Declaration of Dan Devoy ("Devoy Decl."), ¶¶405; Declaration of Steven Lind ("Lind Decl."), ¶¶2-3.

The matriculation of students in the JD Program is governed by written policies and procedures stated in the Golden Gate University School of Law Student Handbook ("the Student Handbook"). Niedwiecki Decl., ¶¶8-9, Ex. A; Devoy Decl., ¶6.

\\\

---

[1] The University treats the motion for restraining order as being the same as the motion for preliminary injunction, since Plaintiff has noticed both motions for the same hearing.

**KARIMI vs. GOLDEN GATE SCHOOL OF LAW, ET AL. [USDC-ND # 3:17-cv-05702-JCS]-
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TRO**

The Handbook contains a prohibited conduct policy that states in part:

"All students at Golden Gate University School of Law …are bound by the Student Handbook rules" and "have an obligation to conduct themselves in a manner compatible with the School of Law's function as an educational institution preparing students for entry into the legal profession. The standards of professionalism within the legal field and within the School of Law are based on principles of honesty and ethics. The School of Law takes seriously these principles and expects all students to do the same. Misconduct, as defined herein, is subject to discipline, which may include suspension or expulsion, as well as communication of the charge and/or sanction to employers, other educational institutions, and relevant bar admission agencies.

Prohibited conduct includes engaging in acts of disruptive or unprofessional conduct, such as …(o)bstruction of, disruption of, or tampering with any School of Law … activity, including teaching, research, administration, disciplinary, or public service functions…acts that are harmful to other persons, defined as.., verbal abuse, threats, intimidation, harassment, and/or any other such conduct that threatens or endangers the health or safety of any person….Prohibited conduct includes engaging in acts constituting a failure to comply with administrative rules and procedures, such as failure to comply with directions of the School of Law or University employees, officials…"  Niedwiecki Decl., ¶¶8-17, Ex. A; Devoy Decl., ¶¶6-13.

**B.     Plaintiff's First Four Weeks of Law School.**

Plaintiff entered the first year law class in August 2017. He accepted an offer of admission and paid out-of-pocket tuition of $4,250.00 for the first semester, the remainder of the regular fall semester tuition and fees having been waived by a law school grant to him and award of other financial aid. Niedwiecki Decl., ¶¶18-20; Devoy Decl., ¶¶14-15; Lind Decl. ¶¶10-12, Ex. R; Leask Decl., ¶¶2-6, 16-17, Ex. BB, CC, DD.

First-year student orientation took place August 8 through 10, 2017, and classes began on August 14, 2017.  Two weeks later, Plaintiff sent a series of "mass" emails addressed to the entire class, beginning at 4:52 a.m. on Saturday, September 2, 2017.  Niedwiecki Decl., ¶¶20-29, Exs. B-I; Leask Decl., ¶¶16-17, Ex. DD.

The content of the emails suggested to the administrators that Plaintiff had become very disgruntled with faculty members and fellow students alike, for such matters as cancellation of a torts class by the professor; and the making of announcements by students at the start or end of class. *Id*.

In his emails, Plaintiff repeatedly solicited the other first year students to join him in his stated plan to sue the School and file complaints with the ABA for what he regarded as breach

**KARIMI vs. GOLDEN GATE SCHOOL OF LAW, ET AL. [USDC-ND # 3:17-cv-05702-JCS]-
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TRO**

S:\Client\106 Golden Gate University\026 Karimi USDC\Pleadings\Plf Motion for TRO\OppositionEG.doc                                -2-

of contract to deliver education. Various students in the first year class then reported to the Dean that they felt insulted, targeted and harassed by Plaintiff's communications directed toward them and the faculty. Students complained to Administration of feeling anxious and physically or emotionally insecure around Plaintiff. *Id*.

After seeing the potential for disruption of first year classes if Plaintiff were to continue to engage in this behavior, the Dean first approached Plaintiff with requests to cease the behavior and, when this failed, directly instructed Plaintiff to cease sending emails to his classmates. Contrary to these instructions, on multiple more occasions, Plaintiff emailed his entire class with more such emails. Niedwiecki Decl., ¶¶25-27, Exs. D-I.

The Dean viewed that an atmosphere was then developing in the School that created a potential to interfere with the first year class educational program. He made the judgment that Plaintiff was not responsive to his instructions and to the requests to him from other students whom he knew found his contacts to be unwelcome, and that Plaintiff would likely continue to act in this hostile manner. Niedwiecki Decl., ¶¶20-39, 51-53, Ex. B-I, J, K, O.

The Handbook provides that the Dean of the Law School may initiate an interim suspension of a student before disciplinary proceedings take place, if he considers it important to ensure the safety and well-being of members of the University community or if the student poses a credible threat of disruption of or interference with the normal operations of the University. Niedwiecki Decl., ¶¶8-14, Ex. A; Devoy Decl., ¶¶6-13, 31-33.

Noting the insubordinate refusal of Plaintiff to follow the Dean's instructions as well as the concerns of safety communicated by students, on September 14, 2017 the Dean used his authority under the Handbook and notified Plaintiff in writing that he was placed upon interim suspension and that he must remain off campus for the time being, and that he must not email other students on the University systems.  In the Dean's view, this action was appropriate to ensure the well-being of other students at School and to avoid disruption of operations. Niedwiecki Decl., ¶¶8-14, 31-34, Exs. A, J; Devoy Decl., ¶¶6-13, 31-33.

\\\

\\\

**KARIMI vs. GOLDEN GATE SCHOOL OF LAW, ET AL. [USDC-ND # 3:17-cv-05702-JCS]-
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TRO**

S:\Client\106 Golden Gate University\026 Karimi USDC\Pleadings\Plf Motion for TRO\OppositionEG.doc                -3-

The next day, on September 15, 2017, Plaintiff came to campus. Three days later, on September 18, 2017, Plaintiff again mass emailed the entire class. Niedwiecki Decl., ¶¶35-36, 51-53, Ex. I, O; Devoy Decl., ¶¶16, Ex. O.

Plaintiff then inquired about options to withdraw from the School. The Dean responded on September 19, 2017 to offer him the opportunity to withdraw from the Law School with $6,500.00 to be paid to Plaintiff for tuition paid by Plaintiff, and to state "withdrawal" on Plaintiff's official transcript. On September 20, 2017, Plaintiff asked for more "negotiation," but with someone other than the Dean. The Dean then removed himself from the negotiation and notified Plaintiff to work with Vice President of Academic Affairs, Barbara Karlin. On October 10, 2017, Plaintiff wrote again, to demand that the School pay him $175,000. Plaintiff stated that he would immediately commence litigation if this demand was not met. Niedwiecki Decl., ¶¶37-50, Exs. K, L, M, N; Leask Decl., ¶¶2-6, Ex. BB, CC.

**C.    Plaintiff Files the Litigation on October 3, 2017.**

Plaintiff filed the Complaint for Damages on October 3, 2017. Plaintiff pleaded three causes of action: (1) Breach of Contract; (2) Defamation; and (3) Intentional Infliction of Emotional Distress. Leask Decl., ¶19, Ex. Z; Dkt. # 1.

In his Complaint, Plaintiff asserts that he became unhappy with his classmates and professors because student association announcements were permitted in class. Plaintiff asserts that he believed that this was improper, as was one professor's postponement of one class in conjunction with the Labor Day Weekend. Plaintiff also complains that the quality of classes was not to the standard that Plaintiff expected. Leask Decl., ¶19, Ex. Z; Dkt. # 1, ¶¶18-21, 29-30, p. 8:19-22.

Plaintiff's breach of contract claim is that "Plaintiff was denied due process as promised in the student handbook" when he was placed on interim suspension. He alleges: "According to the student handbook, interim suspension applies when a student has a hearing pending. For a hearing to be pending there must be charges against the student and the student must be informed of the charges." Leask Decl., ¶19, Ex. Z, Dkt. #1, ¶1, p. 2:6-10; ¶2, ¶25.

\\\

**KARIMI vs. GOLDEN GATE SCHOOL OF LAW, ET AL. [USDC-ND # 3:17-cv-05702-JCS]-
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TRO**

S:\Client\106 Golden Gate University\026 Karimi USDC\Pleadings\Plf Motion for TRO\OppositionEG.doc                                                                                    -4-

1    Plaintiff's defamation claim is based on his claim that Plaintiff was defamed when the Dean sent an email to students of the Law School on September 15, 2017. The email attached to the declaration of Plaintiff states that it is intended to reassure those who saw the police on the premises. The email did not identify Plaintiff by name or in any other manner. Leask Decl., ¶19, Ex. Z, Dkt. # 1, ¶31, p. 8:25-9:7; Ex. 1 to Dkt. # 18 (Plaintiff's Declaration, ¶¶9-10).

Plaintiff's intentional infliction of emotional distress claim asserts that the Dean's decision to use the process in the handbook for the interim suspension caused him to suffer anxiety and depression. Leask Decl., ¶19, Ex. Z, Dkt. # 1, ¶32, p. 9:11-23.

In his prayer for relief, Plaintiff seeks financial compensation for the cost of attending a new law school.  Plaintiff asserts that he received a merit scholarship that would save him "$40,000 in tuition costs a year," and claims damages because "this scholarship" might be unavailable to Plaintiff from other law schools.  Leask Decl., ¶19, Ex. Z, Dkt. # 1, p. 10:19-22.

In his prayer for relief, Plaintiff also seeks damages from being delayed entry into the legal profession by one year. Leask Decl., ¶19, Ex. Z, Dkt. # 1, p. 10:26-11:7.

In his prayer for relief, Plaintiff also seeks unspecified damages should he apply to other law schools and is denied admission. In his prayer for relief, Plaintiff also seeks "damages for the severe emotional distress." Leask Decl., ¶19, Ex. Z, Dkt. # 1, p. 10:23-25.

**D.    Status of the Disciplinary Process Regarding Plaintiff.**

On November 28, 2017, the Dean filed the "Student Misconduct Complaint Form" with the School of Law's Office of Student Conduct & Professionalism. The Complaint Form was promptly transmitted to Plaintiff. Niedwiecki Decl., ¶¶51-54, Ex. O; Devoy Decl., ¶¶16-18; Leask Decl., ¶¶7-9, Exs. O, T.

The Student Misconduct Complaint states:

> "**Disruptive or Unprofessional Conduct:** In my professional judgment, Mr. Karimi's conduct has failed to comply with the standards of professionalism that are required of the students at the Golden Gate School of Law. Over a period of two weeks, Mr. Karimi engaged in behavior that violated the Standards on Student Conduct Sections D(5), D(6), and D(7).
>
> **Failure to Comply:** On September 12, 2017, Mr. Karimi received an email from me stating that he was to no longer email his section. The emails he sent to his

**KARIMI vs. GOLDEN GATE SCHOOL OF LAW, ET AL. [USDC-ND # 3:17-cv-05702-JCS]-
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TRO**

S:\Client\106 Golden Gate University\026 Karimi USDC\Pleadings\Plf Motion for TRO\OppositionEG.doc                    -5-

> section on September 14, 2017 clearly violated the instructions he received from me….
>
> On September 14, 2017, I sent Mr. Karimi an email stating that he was on interim suspension and he was not permitted on campus or permitted to contact anyone at the school except for me. The email also directed Mr. Karimi to only communicate with me through email. Mr. Karimi violated the terms of the interim suspension when he entered campus on Friday, September 15, 2017…
>
> On September 18, 2017, he once again violated the instructions he received, when he emailed his class ….these actions violated the terms of his suspension, which violate GGU Standards of Student Conduct Section D(5).
>
> **Acts Harmful to Other People:** Several students in Mr. Karimi's section requested that he no longer contact them. Mr. Karimi responded by stating that he would continue to contact anyone he believes is interfering with his education. The emails were aggressive such as reasonably would concern students for their security, and they included racially-charged comments that reasonably would do likewise.
>
> Mr. Karimi's conduct interfered with the educational environment He personalized emails to individual students, resulting in discouraging students from attending class.
>
> They also expressed fear of contributing to class discussions because they did not want to be the target and subject of Mr. Karimi's emails.
>
> **Conclusion**
>
> As stated in the Student Handbook, all students have an obligation to conduct themselves in a manner compatible with the School of Law's function as an educational institution preparing students for entry into the legal professional and this obligation creates the standards of professionalism in conduct of students at the School.
>
> The handbook states that prohibited conduct includes disruptive or unprofessional conduct; acts harmful to other persons; and failure to comply with directions. I believe that Mr. Karimi willfully and repeatedly engaged in these three forms of misconduct that violated GGU's Standard of Student Conduct Section D(5) (6) and (7)" (**Exhibit O**)

Assistant Director (of the Office of Student Conduct & Professionalism) Daniel Devoy is the person at the Law School overseeing the disciplinary process. Mr. Devoy has informed Plaintiff that it was his role under the school's policies and procedures to write a report on the matter and invited Plaintiff to discuss the complaint with him. Plaintiff has transmitted to Mr. Devoy, Plaintiff's litigation filings, but no other information. Devoy Decl., ¶¶16-23, Exs. U, V, W, X.

On December 20, 2017, applying the next step in the process, Mr. Devoy transmitted to Plaintiff, the "Disciplinary Action Letter", outlining Mr. Devoy's findings and notifying

KARIMI vs. GOLDEN GATE SCHOOL OF LAW, ET AL. [USDC-ND # 3:17-cv-05702-JCS]-
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TRO

S:\Client\106 Golden Gate University\026 Karimi USDC\Pleadings\Plf Motion for TRO\OppositionEG.doc                -6-

Plaintiff of the upcoming hearing to take place in January 2018. Devoy Decl., ¶¶24-30, Ex. Y; Leask Decl., ¶¶10-15.

The Disciplinary Action Letter states in part:

> "**Summary of Findings**: It is my professional judgment that it is more likely than not that you failed to comply with the standards of professionalism that are required of the students at the Golden Gate School of Law and that you engaged in behavior that violated the Standards on Student Conduct by engaging in disruptive and unprofessional conduct; by engaging in acts harmful to other persons; and by failing to comply with instructions." (**Exhibit Y**)

The Disciplinary Action Letter further informed Plaintiff of the next steps in the process. Devoy Decl., ¶¶24-30, Ex. Y; Leask Decl., ¶10. The Disciplinary Action Letter stated:

> "**Next Steps In the Process**: As stated in the Student Handbook, upon issuance of a Disciplinary Action Letter, the case may be resolved in one of two ways: (1) through the Informal Resolution Process or (2) through a Formal hearing Process before the Law School's Hearing Panel.
>
> In this case, it appears from the file that there has already been extensive communications between you and the Law School in an effort to resolve the matter. In particular, the Law School offered you the opportunity to voluntarily withdraw from the Law School with a full refund of tuition and costs to date, and if so elected by you, there would be no disciplinary action on your student record with the Law School.
>
> You may waive the informal resolution process if you like, however, I am scheduling the informal meeting between myself and you to take place on January 5, 2018, by Skype video conference. Please email me on January 3, 2018, to make arrangements if you wish to proceed with the informal meeting by Skype.
>
> You also have the option as outlined in section F.4.a. to either (1) appeal to the Associate Dean, or (2) request that the case be resolved through the Formal Hearing Process.
>
> Please elect the resolution of your choice by email to me within five (5) business days from the date of this Notice of Disciplinary Action Letter.
>
> If you elect to appeal to the Associate Dean, the Associate Dean will review and decide the matter by January 31, 2018.
>
> If you elect to request a Formal Hearing Process, the hearing shall be conducted by no later than January 31, 2018, unless for good cause you or the Hearing Panel need additional time to hear the matter.
>
> A copy of the Formal Hearing Process procedures are attached for reference.
>
> The focus of inquiry in a formal hearing within the Law School is the determination of whether a violation of the Standards occurred and the appropriate sanction(s). Findings and recommendations of the Hearing Panel will be detailed in a written report to the Associate Dean within five (5) business days

**KARIMI vs. GOLDEN GATE SCHOOL OF LAW, ET AL. [USDC-ND # 3:17-cv-05702-JCS]-**
**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TRO**

S:\Client\106 Golden Gate University\026 Karimi USDC\Pleadings\Plf Motion for TRO\OppositionEG.doc                -7-

of completion of the hearing. The Hearing Panel's report will state what Standards of Student Conduct section(s), if any, the panel determined to have been violated by the student; any behavior(s) which the Hearing Panel believe to have constituted the violation; any recommended sanction(s) within the parameters of the Standards. The Associate Dean will either accept or modify the Hearing Panel's recommendations in a written notice to the student, along with any options for appeal of the Associate Dean's decision(s).

Exact notice of the date, time and place of the hearing will be transmitted to you at a later date. In addition, given that you now reside in the State of Texas, you may appear at the hearing that is to be scheduled through electronic means, such as through Skype video conference or another form of video conferencing that is approved by the Hearing Panel.

If you have any questions regarding the Law School disciplinary process, please direct them to my attention." (**Exhibit Y**)

As stated in the Disciplinary Action Letter, if Plaintiff elects to appeal to the associate dean, the associate dean will review and decide the matter by January 31, 2018. As stated in the Disciplinary Action Letter, if Plaintiff instead elects a Formal Hearing Process, the hearing shall be conducted by no later than January 31, 2018, unless for good cause Plaintiff or the Hearing Panel need additional time to hear the matter. As stated in the Disciplinary Action Letter, Plaintiff has been informed that he may appear at any hearing that is held on the matter through electronic means, such as through Skype video conference or another form of video conference that is approved by the Hearing Panel.  Devoy Decl., ¶¶24-29, Ex. Y; Leask Decl., ¶¶10-14.

The hearing procedures are stated in writing in the Student Handbook. The procedures afford Plaintiff the right to counsel, to be evaluated on the basis of evidence, to call and cross-examine witnesses, and a full panoply of other rights. Niedwiecki Decl., ¶¶6-8, Ex. A; Devoy Decl., ¶¶24-29, Ex. Y.

**E.   The Official Record of the School Does Not Reflect Any Adverse Action Toward Plaintiff.**

Plaintiff's official transcript shows no record of the matter.  Niedwiecki Decl., ¶¶38-41, Exs. K, L; Devoy Decl., ¶¶31-33; Lind Decl. ¶¶12-14, Ex. R.

No sanction(s) have been issued against Plaintiff or placed into his student files. Niedwiecki Decl., ¶¶8-9, Ex. A; Devoy Decl., ¶¶24-30, Ex. Y; Lind Decl. ¶¶12-16, Ex. R.

The Registrar of the School has not yet received a request from any law school or any other school indicating that Plaintiff is seeking admission or transfer to another law school or

KARIMI vs. GOLDEN GATE SCHOOL OF LAW, ET AL. [USDC-ND # 3:17-cv-05702-JCS]-
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TRO

S:\Client\106 Golden Gate University\026 Karimi USDC\Pleadings\Plf Motion for TRO\OppositionEG.doc   -8-

1  any other school. The Registrar of the School has not informed any law school or any other
2  school of Plaintiff's standing at the Law School.  Lind Decl. ¶¶4-9, Ex. Q.

3  Students of the Law School who seek to transfer to another school are permitted to
4  request a "JD student transfer out package" from the Law School's Registrar's Office by
5  submission of the Student Status Letter Request Form. In response to a request for information
6  from Plaintiff, the Registrar has informed Plaintiff of the process to present his request for a JD
7  student transfer package that would include a letter of good standing, class rank, if available,
8  official transcript, and a copy of LSDAS report.  Lind Decl. ¶¶17-19, Ex. S.

9  **F.     The Policy on Interim Suspension.**

10  Section J of XVI of the Student Handbook states that it is within the authority of the
11  Dean to place a student on interim suspension "pending charges."  It does not state that charges
12  must be filed against the student prior to the placement on interim suspension. Niedwiecki
13  Decl., ¶¶8-17, Exs. A, N, K; Devoy Decl., ¶¶7-13, 31-34.

14  **G.     Plaintiff's Motion for Preliminary Injunction.**

15  On December 18, 2017, Plaintiff filed his Motion for Preliminary Injunction and
16  Temporary Restraining Order.  Dkt. # 18.

17  Plaintiff asks the Court to enjoin the Law School from applying its established
18  procedures for a hearing on charges of misconduct and from entering in the record, any
19  discipline that may result. Plaintiff seeks other various orders for mandatory and prohibitory
20  relief including payment of tuition refunds to him. Dkt. # 18.

21  Plaintiff's declaration states that he is a "citizen of Texas and am now living in Texas."
22  Plaintiff's declaration states that he chose to attend the University because of a "merit
23  scholarship I was offered." Dkt. # 18, p. 1:21-24; p. 2:3.

24  Plaintiff's declaration states that he is was "indefinitely suspended by Dean Anthony
25  Niedwiecky [sic] on September 14, 2017 with no specific reason given. I was also told in the
26  suspension letter to only contact the dean and not to email anyone from the school. After being
27  suspended, I tried to contact the dean in an effort to return to school. The dean responded on
28  September 19, 2017 (Exhibit B submitted with the 'Answer to Complaint for Damages' by

**KARIMI vs. GOLDEN GATE SCHOOL OF LAW, ET AL. [USDC-ND # 3:17-cv-05702-JCS]-
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TRO**

S:\Client\106 Golden Gate University\026 Karimi USDC\Pleadings\Plf Motion for TRO\OppositionEG.doc                    -9-

1  defendant) giving conflicting deadlines to make a decision on how to proceed. The options
2  were: voluntary withdrawal (with a full refund), administrative withdrawal, code of conduct
3  proceedings. Should I not make a decision within ten or seven days, he would file a complaint
4  against me or have me administratively withdrawn." Dkt. # 18, p. 2:4-10.

5  Plaintiff's declaration states that he then "returned to Texas in the meantime to save
6  money and be with family." Dkt. # 18, p. 2:12-13. He states that he first "was only offered a
7  tuition refund plus interest if withdrew voluntarily. I was later offered, in addition to a full
8  refund if I withdrew voluntarily, relocation costs, books costs, and other expenses on the
9  condition I sign a release of claims." *Id*., p. 2:13-15.

10  Plaintiff's declaration states that later, "I was contacted via email by a Dan Devoy,
11  claiming to be the Assistant Director of the Office of Student Conduct and Professionalism and
12  he then confusingly indicates receipt of the Complaint Form." Dkt. # 18, p. 2:22-26.

13  Plaintiff's declaration states that to apply to other law schools, "they require me to
14  disclose any previous law schools attended and deliver all records from previous law schools."
15  Dkt. # 18, p. 3:4-6.

16  Plaintiff's declaration states that he has applied to one other law school and has been
17  denied admission. Plaintiff offers no information on date of application, name of school, date of
18  notification of decision and/or stated reason for decision. Plaintiff does not state that he has
19  applied to any other law schools. Dkt. # 18, p. 3:4-6.

20  Plaintiff does not state that the Law School has provided any information to other law
21  schools, much less any information that has impaired or will impair his application.

22  Plaintiff's declaration states that on September 18, 2017, Dean Niedwiecki sent two
23  emails titled "ADVISORY: Recent Security Concerns" to students at GGU. Plaintiff does not
24  assert that he was identified in this message, and he attaches the message to his declaration. Dkt.
25  # 18, p. 3:7-10.

26  Plaintiff's declaration states that on August 18, 2017, a student in class cursed at
27  Plaintiff from the seat behind Plaintiff when Plaintiff has his hand up in class. Plaintiff states
28

**KARIMI vs. GOLDEN GATE SCHOOL OF LAW, ET AL. [USDC-ND # 3:17-cv-05702-JCS]-
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TRO**

S:\Client\106 Golden Gate University\026 Karimi USDC\Pleadings\Plf Motion for TRO\OppositionEG.doc                                    -10-

1  that the Administration intervened when he filed a complaint against the student and the
2  Administration made sure to relocate class seating. Dkt. # 18, pp. 3:27-4:16.

3  Plaintiff's declaration states that other first year students sent him hostile emails because
4  of the fact that Plaintiff was transmitting emails "where about how class time was being used. A
5  professor canceled class at the request of a few students who wanted a longer labor day
6  weekend. I asked the professor to reinstate the class with no success. I requested for students to
7  not request the professor to cancel classes arbitrarily and to not promote their student groups or
8  bid for student elections during class time…. I also requested that students not talk about
9  personal stories or any other irrelevant topics during class time." Dkt. # 18, p. 4:17-27.

10  Plaintiff's declaration states that "on the same day I was suspended, before the actual
11  suspension, I sent an email to the dean and to a teacher who seemed to be discriminatory
12  regarding class participation. I had stated in my email that the said professor was not treating me
13  fairly. I stated that he would sometimes ignore me when my hand was raised, abruptly cut me
14  off, etc, but did not do so with other students. I received no response. Due to my experience
15  with the school, I have been severely depressed and anxious. My dreams of becoming a lawyer
16  have been shattered and I have been unexpectedly been thrown to the job market, unprepared,
17  with a family to provide for. I left my career as a teacher in China to become a lawyer. I cannot
18  work as a teacher here because I do not have a teaching certificate, which is unnecessary to
19  work as a teacher in China." Dkt. # 18, p. 4:28-5:14.

20  **III.  LEGAL ANALYSIS AND ARGUMENT**

21  In moving for a preliminary injunction, Plaintiff seeks an "extraordinary remedy that
22  may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v.*
23  *Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008); *Lopez v. Brewer*, 680 F.3d
24  1068, 1072 (9th Cir. 2012); *Earth Island Institute v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

25  To support his motion, Plaintiff must offer evidence to substantiate four factors: (1) a
26  strong likelihood of success on the merits; (2) irreparable injury to plaintiff if the preliminary
27  relief is not granted; (3) balance of hardships favoring him; and (4) advancement of the public
28  interest. *Winter, supra.,* 555 U.S. at 20-21; *Los Angeles Memorial Coliseum Comm. v. Nat.*

**KARIMI vs. GOLDEN GATE SCHOOL OF LAW, ET AL. [USDC-ND # 3:17-cv-05702-JCS]-**
**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TRO**

S:\Client\106 Golden Gate University\026 Karimi USDC\Pleadings\Plf Motion for TRO\OppositionEG.doc       -11-

*Football League, et al.*, 634 F.2d 1197, 1201 (9th Cir. 1980); *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F.Supp. 1320, 1323 (N.D. Cal. 1995). Plaintiff has the burden of persuasion. *Klein v City of San Clemente*, 584 F.3d 1186, 1201 (9th Cir. 2009).

On the first factor, Plaintiff cannot establish a strong likelihood of success on the merits of his breach of contract claim. Under California law, the student policies of an institution of higher education constitute the terms of the contract between the student and the institution. *Zumbrum v. University of Southern California*, 25 Cal.App.3d 1, 10 (1972): ("The basic legal relation between a student and a university is contractual in nature. The catalogues, bulletins, circulars and regulations of the institution made available to the matriculant become part of the contract.") The published policies of the institution form implied terms of the student matriculation contract. *Kashmiri v. Regents of University of California*, 156 Cal.App.4th 809, 828-829 (2007).

Plaintiff's assertion that the Dean lacked the authority to place him on interim suspension is contrary to the language of the Handbook. The Handbook plainly provides that "to ensure the safety and well-being of members of the University community or if the student poses a credible threat of disruption of or interference with the normal operations of the University," an interim suspension may be imposed "pending action on charges." Niedwiecki Decl., ¶¶8-9, Ex. A. Plaintiff would prefer that the policy state that charges must be formally filed before an interim suspension can be imposed, but the policy does not so state. The policy allows for an interim suspension, after which disciplinary processes then ensue.

As to the tort claim for intentional infliction of emotional distress, here also Plaintiff cannot show a strong likelihood of success on the merits. The essential elements of the common law tort of intentional infliction of emotional distress are as follows:

> "A prima facie case requires (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress. There is liability for conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress." *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal.3d 148, 155, FN7 (1987).

**KARIMI vs. GOLDEN GATE SCHOOL OF LAW, ET AL. [USDC-ND # 3:17-cv-05702-JCS]-
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TRO**

S:\Client\106 Golden Gate University\026 Karimi USDC\Pleadings\Plf Motion for TRO\OppositionEG.doc                                                         -12-

*See also Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991); *Davidson v. City of Westminster*, 32 Cal.3d 197, 209 (1982) ("Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.")

Plaintiff cannot substantiate this tort, as management decisions are not "outrageous conduct" for purposes of this tort. *Cole*, *supra* at 155.

The defamation claim likewise cannot succeed. It was a qualified privileged act of the Dean to inform students in writing why police were seen on the premises, and he did so with no identification of Plaintiff, must less a false statement.

California Civil Code § 45 provides:

> "Libel is a false and unprivileged publication by writing…which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injury him in his occupation." Cal. Code of Civ. Proc. § 45.

"A publication 'must contain a false statement of *fact*' to give rise to liability for defamation." *Campanelli v. Regents of the University of California*, 44 Cal.App.4th 572, 578, (1996) citing *Jensen v. Hewlett-Packard Co.*, 14 Cal.App.4th 958, 970 (1993); see also *Nygard v. Uusi-Kerttula,* 159 Cal.App.4th 1027, 1048 (2008).

Cal. Code Civ. Proc. §47(c) provides a qualified privilege for "a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information."  "Interested persons" under §47(c) are "a communicator and a recipient with a common interest, although to be protected the communication must be one 'reasonably calculated to further that interest.'"  *Cuenca v. Safeway San Francisco Employees Fed. Credit Union*, 180 Cal.App.3d 985, 995 (1986).

Plaintiff offers no evidence of any statement about Plaintiff, false or not, nor of improper motive of the Dean when communicating with students who are clearly interested persons. Thus, here also as to the defamation claim, Plaintiff cannot show a strong likelihood of prevailing.

**KARIMI vs. GOLDEN GATE SCHOOL OF LAW, ET AL. [USDC-ND # 3:17-cv-05702-JCS]- OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TRO**

S:\Client\106 Golden Gate University\026 Karimi USDC\Pleadings\Plf Motion for TRO\OppositionEG.doc  -13-

Second, Plaintiff cannot show irreparable harm. The litigation in the normal course can provide Plaintiff with an adequate monetary remedy if he succeeds. In fact, Plaintiff has made a specific prayer for relief in the form of tuition refund; lost scholarship value; lost wages for one or more years' delay in his legal education; and other monetary damages. Dkt. # 1.

Plaintiff speculates – without supporting evidence – on the possibility that if he is not returned to the Law School, he may lose the opportunity for a legal education if he is not able to secure admission elsewhere. However, mere "possibility" of irreparable injury is insufficient. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *Winter, supra*, 555 U.S. at 20-21. Speculative injuries are insufficient to show entitlement to a preliminary injunction. *Goldie's Bookstore, Inc. v. Sup.Ct.*, 739 F.2d 466, 472 (9th Cir. 1984); *Big Country Foods, Inc. v. Board of Education of Anchorage School Dist.*, 868 F.2d 1085 (9th Cir. 1989).

Rather, Plaintiff must demonstrate "immediate threatened harm." *Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). A risk of irreparable harm that may occur sometime in the future is insufficient. The harm must be imminent. *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994); *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3rd Cir. 1992); *Midgett v. Tri-County Metro. Transp. Dist. of Oregon*, 254 F.3d 846, 850-851 (9th Cir. 2001).

Here, there is presently no adverse entry in Plaintiff's transcript and all decisions that could impose a disciplinary sanction await the finality of the hearing process, currently scheduled to be completed by the end of January 2018.

Plaintiff speculates that no other law school will accept him, but he has offered no evidence. Thus far, he vaguely states, one law school has not admitted him, but he offers no evidence to support the assertion that if he makes other applications, no law school will admit him. Plaintiff's claim of irreparable harm is entirely speculative.

Third, Plaintiff cannot show that the balance of hardships tips in favor of him. He seeks to enjoin the disciplinary process, but he offers no reason to believe that the hearing process will not fairly adjudicate the charges. The process contains all elements of fundamental fairness, including representation by counsel of his choosing, confrontation by evidence, cross-

**KARIMI vs. GOLDEN GATE SCHOOL OF LAW, ET AL. [USDC-ND # 3:17-cv-05702-JCS]-
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TRO**

S:\Client\106 Golden Gate University\026 Karimi USDC\Pleadings\Plf Motion for TRO\OppositionEG.doc                -14-

1  examination, etc.  Thus, applying the equities test, enjoining a disciplinary process that Plaintiff
2  does not legally challenge, has no logic.

3  The balance of equities do not favor Plaintiff on Plaintiff's request for an order requiring
4  the Law School to return him to classes, before the discipline process is completed next month.
5  Plaintiff filed the action on October 3, 2017, but then he delayed until mid-December to notice a
6  motion for preliminary relief, thus meaning that a hearing takes place on the matter well after
7  the spring semester begins (January 8). Further, Plaintiff has not completed the fundamental fall
8  semester courses; thus a return for spring courses is academically impossible.

9  Further, from an equities balancing perspective, the intrusion of returning a student who
10 may again cause disruption is an important negating factor, as United States District Judge
11 Jeremy Fogel held in *Mou v. W. Valley College,* 2009 U.S. Dist. LEXIS 59615 (N.D. Cal., June
12 29, 2009). There, the Court denied a student's request for a preliminary injunction compelling
13 her to be reinstated to a paralegal program at the college, reasoning that the hardship to the
14 college from reinstating a student who may cause disruption is an important factor. "Nor do
15 Plaintiff's additional arguments regarding the scheduling of the disciplinary hearing affect the
16 Court's previous determination that the balance of hardships tips against Plaintiff, as the
17 hardship to WVC caused by a repeatedly disruptive student is greater than the hardship to
18 Plaintiff of possible delay in getting a degree. *See Boucher v. School Bd. of School Dist. of*
19 *Greenfield,* 134 F.3d 821, 826-28 (7th Cir. 1998)." *Id*. at 5.

20 As to the fourth factor, advancement of the public interest, Plaintiff has alleged only
21 common law claims in his Complaint. There are no constitutional or statutory claims. Nor does
22 Plaintiff identify any possible public interest in his returning to the Law School by preliminary
23 relief.

24 Conversely, from the perspective of the ability of the University to operate its law school
25 for the benefit of a large group of first-year students, the public interest weighs more strongly in
26 the Law School's favor, to avoid the risk to the education of the students at large.

27 Like the other factors, Plaintiff has not made a sufficient showing.
28 \\\

**KARIMI vs. GOLDEN GATE SCHOOL OF LAW, ET AL. [USDC-ND # 3:17-cv-05702-JCS]-
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TRO**

S:\Client\106 Golden Gate University\026 Karimi USDC\Pleadings\Plf Motion for TRO\OppositionEG.doc                    -15-

## IV. CONCLUSION

Plaintiff cannot satisfy the required elements of a strong likelihood of success on the merits, irreparable injury if the preliminary relief is not granted, balance of hardships favoring him, and advancement of the public interest.

For these reasons, it is requested that the Court enter an order denying the motion for a preliminary injunction in its entirety.

DATED:   December 22, 2017          **VARTAIN LAW GROUP**

BY:   /s/Michael J. Vartain
MICHAEL J. VARTAIN
STACEY L. LEASK
Attorneys for Defendants
GOLDEN GATE SCHOOL OF LAW, and
DEAN ANTHONY NIEDWIECKI

**KARIMI vs. GOLDEN GATE SCHOOL OF LAW, ET AL. [USDC-ND # 3:17-cv-05702-JCS]-
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TRO**

S:\Client\106 Golden Gate University\026 Karimi USDC\Pleadings\Plf Motion for TRO\OppositionEG.doc   -16-