Morteza Benjamin Ray Karimi
14004 Merseyside Dr.
Pflugerville, Texas, 78660
512-969-0934
nyccarini@hotmail.com

MORTEZA BENJAMIN RAY KARIMI, PRO SE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| MORTEZA BENJAMIN RAY KARIMI | Case No.: 3:17-cv-05702-JCS |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| vs. | |
| GOLDEN GATE SCHOOL OF LAW, DEAN ANTHONY NIEDWIECKI, in his official capacity, | Judge: Hon. Spero<br>Action Filed: May 14, 2018 |
| Defendants. | |

**DEMAND FOR JURY**

Comes now Morteza Benjamin Ray Karimi, Plaintiff in the above action, and files this Complaint seeking damages, and further alleges as follows:

///

**PERMISSION TO AMEND GRANTED**

Plaintiff filed the original Claim on October 3, 2017. Plaintiff files this amended complaint with the permission of the presiding Judge Spero as stated in his ruling on the injunction hearing held on April 20, 2018. Dkt. # 57. Judge Spero set a deadline of May 14, 2018 to submit the amended complaint.

**PARTIES**

Plaintiff was a student at Golden Gate School of Law ("GGU"). Plaintiff resided in San Francisco, California to attend the law school. Plaintiff is originally from Austin, Texas and relocated to San Francisco solely to attend GGU. Plaintiff no longer resides in California. Plaintiff is a resident and domiciled in Austin Texas. At the time of his attendance at GGU, Plaintiff planned to return and work in Texas.

Defendant is located in San Francisco, California. Dean Niedwiecki, in his official capacity, resides in San Francisco and holds office at GGU.

**INTRODUCTION**

Plaintiff attended GGU to fulfill his dream of becoming a lawyer and had this dream cut short when Dean Niedwiecki ("Dean") abruptly and wrongfully placed Plaintiff on interim suspension only after a month of school. The Dean gave no reason in his initial suspension letter and did not communicate with Plaintiff regarding the suspension or when Plaintiff could return to school until after a week later. Even then, the Dean would not allow Plaintiff to return to school and was intent on keeping Plaintiff from returning to GGU. Not only did the Dean violate its own procedure as stated in the GGU student handbook, he also violated state law.

The Dean kicked Plaintiff out of school for emails that Plaintiff had sent regarding how class time was being spent. Students were asking for a class to be canceled so they could have a longer holiday. Students were also making announcements about their student organizations and bids for

student council during class time. Plaintiff reported these distractions to the administration to no avail. GGU did not even investigate or take action against a student who harassed Plaintiff earlier in the year. Plaintiff's emails asks students politely not to request for class cancellations and to not make irrelevant announcements during class time. Plaintiff never singled out a student and had intentions of improving the quality of education he was receiving. Plaintiff in turn received hostile emails from students which were shared with the whole class. Again, GGU failed to intervene in a productive way and responded by kicking Plaintiff out without regard to student handbook procedure or policies.

Plaintiff was further humiliated by a defamatory email the Dean sent to students regarding Plaintiff and his situation. Plaintiff has suffered extreme mental and emotional distress due to the actions of GGU. Plaintiff has lost motivation and confidence in the legal profession. GGU's unethical, immoral, and illegal actions has adversely affected Plaintiff and his family.

The Dean's heavy handed dealing with Plaintiff shows an abuse of power and a malicious intent to punish Plaintiff for Plaintiff's complaints of how the law school was managed. The Dean was offended that Plaintiff continued to communicate with students about distractions in the class, contrary to what the Dean ordered Plaintiff. The Dean attempted to curtail Plaintiff's freedom of speech and censor him. In doing this, the Dean violated state statute as well. The Dean had no legitimate justification for his suspension of Plaintiff except to satisfy his own ego. Plaintiff's actions meet none of the punishable offenses as stated in the student handbook.

**FACTS**

Plaintiff moved from China back to the USA to attend GGU. Plaintiff chose GGU over another law school because of a merit scholarship awarded to him in the amount of $40,000 a year. Plaintiff started classes in mid-August of 2017. Plaintiff took out a private student loan to pay for his education. The loan accrued interest.

On Friday August 18, 2017, Plaintiff was harassed by another student who sits behind him in torts class. Plaintiff had raised his hand to answer a question the professor had asked after another student had read a law case. The student who sits behind Plaintiff told Plaintiff to put his hand down because it wasn't Plaintiff's case. Plaintiff kept his hand raised and when the professor called on him, asked if it was okay to ask questions on another student's case. The professor answered affirmatively. Then the student sitting behind Plaintiff said to Plaintiff, "You punk mother fucker…" to which the rest was not heard clearly by Plaintiff. Plaintiff immediately left class to inform Associate Dean of Law Student Support Jessica Bride ("Bride"). Bride called in campus security Mike Koperski ("Koperski"). The two informed Plaintiff that they would look into the matter and for Plaintiff not to return to class that day. Koperski and Bride said they would have a resolution by the next class, which was on Monday. As Monday approached, Plaintiff did not hear back from either of the two and inquired the situation to Bride. Bride gave the solution that Plaintiff switch seats. Plaintiff was upset by this solution. He had chosen his original seat because it was closest to the professor. Plaintiff informed Bride of this. Reluctantly, Plaintiff moved in order to try and focus on his education. Immediately after switching seats, the student who sat next to Plaintiff's new seat objected to having Plaintiff sit next to her and asked the Professor to make Plaintiff switch seats again away from her. Frustrated and distracted, Plaintiff refused to switch again. It was at that point the student who harassed Plaintiff was made to move by GGU administration so Plaintiff could return to his original seat. Plaintiff was told by Bride that there would be no further issues with the harassing student. Later that day, the harassing student injected himself into a group study Plaintiff was having with other students in the library. He was uninvited and proceeded to interrupt Plaintiff's conversations. Plaintiff left the group and reported the incident to Bride. Plaintiff did no get a response back.

Plaintiff had also called the San Francisco Police Department to report the incident.

On Friday August 31, 2017, Plaintiff's torts professor canceled a class scheduled by syllabus on Monday September 1, 2017. The cancellation was due to a request made by a few students who wanted a longer Labor Day weekend. The professor initially declined to cancel the class. The professor then made a deal with the class that if the class could define the tort "assault" verbatim, he would cancel the class. Only about five students defined the tort. Regardless of the results, the professor canceled the class.

Plaintiff expressed his objection to the professor and to Bride. The professor said that he felt students were caught up with material and that it was to his discretion when he could cancel class. Bride offered no help or resolution. No compensation was given. Plaintiff then emailed his objection to his class. Plaintiff did not single out a student nor did he use any vulgar or threatening language. Plaintiff was civil, polite, and cordial.

Plaintiff received an email to speak with the Dean and Assistant Dean Mark Yates ("Yates"). The two asked how Plaintiff how would he like class cancellations to be handled in the future. Plaintiff told them that there should be no arbitrary class cancellations. The Dean asked Plaintiff not to use TWEN, the school intranet system, to communicate with students. Plaintiff never used TWEN to communicate with students.

Around late August, students started making announcements during class time about their student organizations and their candidacy for student council positions. Such announcements would start before class and spill into class time, sometimes up to fifteen minutes. Professors would even allocate class time, sometimes up to thirty minutes, to allow a student to speak about these matters.

Plaintiff expressed his objections to GGU about such actions being allowed however the announcements continued. After failure of GGU to intervene, Plaintiff emailed his class stating his objections to such announcements during class time. Plaintiff's emails did not single out anyone nor use foul, threatening, or any other aggressive language. Some students responded in a hostile

manner to Plaintiff's emails. The emails called Plaintiff a "coward" and a "bully. These emails were sent to the whole class.

GGU allowed an outside company to advertise on campus leading students to believe that attendance was mandatory. The "workshop" was scheduled in between classes and an email was sent to students by the GGU financial aid office. The workshop was not part of the curriculum.

On September 14, 2017, Plaintiff emailed the Dean about a professor who seemed to be discriminating against Plaintiff. The professor would cut off Plaintiff or not allow Plaintiff to speak when he felt Plaintiff was going off topic. Sometimes, the professor completely overlooked Plaintiff's raised hand. He did not treat other students in such manner.

Later that day, the Dean emailed Plaintiff stating that Plaintiff was put on indefinite interim suspension. The email further states that Plaintiff can not come on campus and must not email anyone from GGU. The email does not give a reason behind the suspension nor a date when Plaintiff will be informed of further action. The email also states that his access to the library and electronic research systems has been discontinued. The email says that if Plaintiff violates these instructions, he will be subject to disciplinary action up to and including expulsion.

Plaintiff did not read the email before the next class and went to school on September 15, 2017. Plaintiff was greeted at the entrance by a man who Plaintiff had never seen before. Plaintiff then proceeded to the library to prepare for his next class. Plaintiff saw Bride enter the library, briefly look at Plaintiff, converse with a group of students, look at Plaintiff again, then exit the library. About five minutes before class was to begin, Plaintiff saw Koperski and the man who greeted Plaintiff at the entrance approach and speak with the same group of students as Bride spoke with. As Plaintiff attempted to exit the library, Plaintiff was blocked by Koperski and the man and told to follow them to a private room. In the private room Plaintiff was given the suspension email. Plaintiff requested police presence. Plaintiff left the GGU building and waited for police to arrive.

When police arrived, they told Plaintiff that he was suspended and if he comes back he would be trespassing.

Plaintiff attempted to contact the Dean to no avail. The Dean would not respond to Plaintiff's emails or phone calls.

The Dean then sent an email to the GGU community that was titled "ADVISORY: Recent Security Concerns". The email states that Plaintiff had some "behavioral issues" at GGU and has been requested to leave. The email further states that GGU will stay in contact with Plaintiff in the meantime and that there will be heightened security on campus. A classmate told Plaintiff that after the incident on September 15, 2017, GGU went into "lock-down" mode where all but one entrance and exit were blocked off.

On September 19, 2017, Plaintiff received an email from the Dean. The email does not state what Plaintiff did to deserve the suspension and sets forth a few courses of action which are: voluntary withdrawal, administrative withdrawal, or code of conduct proceedings. The Dean states that if there is no withdrawal, the Dean will submit a disciplinary complaint. The Dean states that he will submit a complaint based on Plaintiff not following his directions on communication with others. The letter gives conflicting dates of when to respond from seven to ten days. The letter states that if he does not hear back from Plaintiff, he will decide between administrative withdrawal and code of conduct proceedings. The Dean states that Plaintiff is not allowed to return to school in the meantime. The Dean offers Plaintiff his tuition and nothing more if he withdraws.

Plaintiff refused to withdraw and demanded compensation from GGU. Due to the Dean's involvement, Plaintiff wanted to speak with someone else regarding this matter. Plaintiff was referred to Vice President of Academic Affairs Barbara Karlin ("Karlin"). Karlin offered to refund Plaintiff's tuition plus interest, book fees, and deposits. Karlin states nothing more can be offered because this is a disciplinary matter. Karlin then later offers all of the above plus relocation

expenses. Plaintiff is then emailed by counsel for GGU, Mike Vartain ("Vartain") with an agreement to pay all of the above on the condition that Plaintiff sign a waiver of claims. Plaintiff refuses the offer.

Plaintiff is then contacted by Yates in an attempt to persuade Plaintiff to take the offer with a new condition that Plaintiff would not have to sign a waiver. The total amount Plaintiff would receive would be $6,500. When Plaintiff refused, stating he could get an injunction to return to GGU, Yates responded with "You're not a lawyer." Yates also chastised Plaintiff for not taking his advice. Yates states that if Plaintiff doesn't withdraw and goes through a disciplinary hearing, it will end bad for him.

Plaintiff received an email on November 28, 2017 from Visiting Professor and Director of the Veterans' Legal Advocacy Center Dan Devoy ("Devoy"). Devoy's title is shown as such on the Golden Gate University website. Devoy stated that he is the Assistant Director of the Office of Student Conduct and Professionalism. Devoy stated that he would like to speak with Plaintiff regarding his Complaint towards the school. Plaintiff informed Devoy that Plaintiff has been told by GGU's attorney to handle all matter's through Defendants counsel. Plaintiff tells Devoy that if there is anything he would like to know about Plaintiff's Complaint, he can get the Complaint from the attorney for GGU.

Plaintiff then receives an email on December 1, 2017 from counsel for Defendant, Stacey Leask ("Leask"). The email has an attachment that is a student misconduct complaint form that was filled out by the Dean. The complaint states three infractions from the student handbook that the Dean alleges Plaintiff had committed: disruptive or unprofessional conduct, failure to comply, and acts harmful to other people. All three infractions of based on Plaintiff's emails to his class. The Dean asserts that Plaintiff failed to comply by contacting other students, which was against his

orders. The Dean wants a resolution of expulsion. Devoy later sends Plaintiff a "Disciplinary Action Letter" on December 20, 2018.

Plaintiff was then told by Devoy that he would like to speak with Plaintiff as an "informal resolution process", as stated in the student handbook. Plaintiff then filed an injunction to enjoin the school from the disciplinary hearing and to reinstate Plaintiff if needed. GGU agreed to postpone the disciplinary hearing until after the ADR mediation meeting.

## FIRST CAUSE OF ACTION

### VIOLATION OF CALIFORNIA EDUCATION CODE § 94367

California Education Code § 94367 states that "No private post secondary educational institution shall make or enforce a rule subjecting a student to disciplinary sanctions solely on the basis of conduct that is speech or other communication that, when engaged in outside the campus or facility of a private post secondary institution, is protected from governmental restriction by the First Amendment to the United States Constitution or Section 2 of Article I of the California Constitution." Section 2 Article 1 of the California Constitution states that "Every person may freely speak, write, and publish his or her sentiments on call subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech of press."

GGU is a private post secondary institution and put Plaintiff on interim suspension based solely on emails Plaintiff had sent to his class.

Plaintiff's emails did not single out anyone or use vulgar or aggressive language of any kind. Plaintiff's emails were sent off campus, even so, courts have interpreted this statute to protect student's speech on campus as well. Plaintiff's speech is protected by the First Amendment and Section 2 of Article I of the California Constitution. Plaintiff's speech can be categorized as complaints. Plaintiff emailed his class regarding distractions that were caused by some students in the class and the enabling of such distractions from professors. Plaintiff's emails asked students not

to cancel class, not to give irrelevant announcements in class, and gave factual background about GGU. Plaintiff's speech was not obscene, false statement of fact, or any other unprotected speech as has been determined by the Courts, nor has GGU proved or alleged Plaintiff's speech was such unprotected speech. Plaintiff has a legal right to express his objections regarding interference with his education.

The Dean attempted to restrain and abridge Plaintiff's speech in a few ways. First, the Dean informed Plaintiff not to communicate with students using the school intranet system. Second, the Dean told Plaintiff not to communicate with the class via email. Third, the Dean told Plaintiff not to communicate with anyone from GGU. Fourth, the Dean told Plaintiff to only communicate with him through email. Under such rules, that Plaintiff was punished for violating, not only was Plaintiff's rights as protected by the California Constitution and First Amendment right of freedom of speech violated, but also his First Amendment right of freedom of association.

The Dean attempted to curtail and abridge Plaintiff's speech. As Plaintiff's speech was protected under the First Amendment and the California Constitution, as well as done off campus, GGU's actions violated California Education Code § 94367.

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT

Courts have determined that the relationship between a student and a private school is a contractual one. Such contractual obligations come from publications from the school. One such publication is the student handbook. The student handbook stipulates the disciplinary procedure. GGU has violated its own terms of the student handbook in more than one way.

As written in the student handbook, the first part under disciplinary procedure is the initiating of a complaint. There was no complaint filed until almost three months after Plaintiff was suspended. Plaintiff has still not allowed to return to school.

The Dean placed Plaintiff on "interim suspension" as the Dean interpreted it in the student handbook. The first sentence of the section "interim suspension" states that charges must be pending to place a student on interim suspension. Plaintiff had no charges pending at the time of suspension and did not have charges until almost three months later. Nor does Plaintiff's conduct meet any of the criteria in which interim suspension can be applied.

Under the interim suspension section of the student handbook, it states that the decision of placing a student on interim suspension will be determined by the Assistant Director for Student Conduct and Professionalism and approved by the Dean. The Dean unilaterally placed Plaintiff on interim suspension and Plaintiff did not hear from the Assistant Director for Student Conduct and Professionalism until about two and a half months later. The section also states that the Assistant Director for Student Conduct and Professionalism will determine if the student shall be denied to classes or any other restrictions. The Dean unilaterally did not allow Plaintiff to attend class and cut off Plaintiff from all of his online legal research accounts like Westlaw and LexisNexis.

GGU violated its contractual obligation to provide Plaintiff with due process as well as other student handbook policies. Plaintiff was punished without receiving due process and was never found liable for any infraction.

Plaintiff did not conduct himself or behave in anyways that are against student handbook policy.

A teacher canceled a scheduled class because some students wanted a longer Labor Day weekend. Plaintiff had already paid tuition and was denied the contractual obligation of the professor providing the class for that day.

Plaintiff paid tuition to learn about the law, as GGU is a law school. On more than one occasion, class time was used for other things than learning about law. Plaintiff was forced to listen to student announcements regarding student organizations and bids for student council that were

done during class time. The student handbook specifically states that student organizations can publicize their activities in the "Events Calendar", "Law School News", and by posting approved fliers and digital signage. All of these methods are outside of the classroom and class time. GGU failed to prevent students from interrupting class time.

It appears GGU did not have an "Assistant Director for Student Conduct and Professionalism" as defined in the student handbook. GGU acknowledges this fault by altering the student handbook after Plaintiff brought forth this lawsuit. The Assistant Director for Student Conduct and Professionalism has been deleted and all roles that would otherwise be fulfilled by the Assistant Director for Student Conduct and Professionalism are now fulfilled by the Associate Dean. By not having an Assistant Director for Student Conduct and Professionalism, GGU was not even capable of offering students due process. This would explain why the Dean did not file a complaint until two and half months later, enough time to create and appoint someone to the position of Assistant Director of Student Conduct and Professionalism. This would also explain GGU's failure to investigate Plaintiff's harassment complaint. According to the student handbook, the Assistant Director for Student Conduct and Professionalism plays a vital role in the due process and rights of a student. The Assistant Director for Student Conduct and Professionalism acts as a neutral who leads the whole complaint and disciplinary procedure. Regardless of what happened, the Assistant Director of Student Conduct and Professionalism should have stepped in from the very beginning to make the offers that were made by the Dean and other GGU staff.

Due to GGU's breach, Plaintiff was not able to attend classes or participate in any other way. Plaintiff was not found responsible for any wrong doing. To his ability, Plaintiff performed on his part and was prevented from further performance by GGU.

Due to GGU's breach, Plaintiff has lost one year of his life and has been set back at least one year from the legal profession. Plaintiff has also had to pay back his student loan plus interest.

As a condition of the loan, Plaintiff must pay back the loan amount plus interest within six months of being a non-student. Essentially, Plaintiff wasted the interest money he had to pay back to the bank.

## THIRD CAUSE OF ACTION

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

Every contract imposes a duty of good faith and fair dealing. GGU has violated this covenant in more than one way. GGU discriminated against Plaintiff in its use of discipline. Plaintiff had been harassed and reported it to the GGU administration. GGU failed to act upon or investigate the matter. GGU failed to move the harassing student until Plaintiff's new seat bothered another student. The student even continued to harass Plaintiff after Plaintiff was told that he would have no other problems with the harasser. The harasser attempted to stop Plaintiff from asking questions in class and harassed and cursed him when Plaintiff defied him. Compared to the harassment Plaintiff received, Plaintiff's "misconduct" was trivial. The Dean's requested resolution also emphasizes the unfairness of GGU. The Dean is asking for expulsion for Plaintiff's emails. Compared to how GGU handled the harasser, this punishment is extreme, absurd and unfair.

GGU was also not fair to Plaintiff when it suspended Plaintiff without notice or charges and delaying a resolution. Plaintiff was put on interim suspension and not given any information regarding the suspension until five days later. Plaintiff had exams coming in less than two weeks. Even when the Dean did send an email regarding the suspension, the Dean would not allow Plaintiff to return to campus but instead pressured him to withdraw. The Dean stated that if Plaintiff did not withdraw, he would file a disciplinary complaint. By these actions, Plaintiff lost his first semester without any kind of charges or hearing. Furthermore, GGU has kept Plaintiff's fall tuition even though Plaintiff only attended school for one month. GGU is using Plaintiff's tuition as a negotiating tool to get Plaintiff to withdraw. GGU is exploiting Plaintiff's financial situation to its

benefit by withholding Plaintiff's tuition and abusing its power, knowing that Plaintiff could not afford a lawyer to contend GGU's misconduct.

GGU's attempt to have a due process also shows their bad faith and unfairness. The Dean states three types of misconduct that Plaintiff committed, according to the student handbook. Each misconduct has provisions that constitutes such misconduct. For example, the provision of "Acts Harmful to Other Persons" is defined as a physical abuse, threats, harassment, hazing, possession of firearms, and other actions that would harm others. The Dean alleges that Plaintiff committed "Acts Harmful to Other Persons" in his complaint. However the Dean does not allege Plaintiff committed any of the definitions of "Acts Harmful to Other Persons." Likewise for the other two misconduct allegations. He simply states what misconduct he thought Plaintiff committed, and gives his own opinion about how Plaintiff committed the misconduct. The Dean's complaint is vague and does not give specific information on what exactly Plaintiff did to constitute the misconduct. He merely states how some students were subjectively affected by Plaintiff's emails. For Devoy to decide to issue Plaintiff a disciplinary letter on such unclear information that does not meet the criteria of such misconduct, shows unfair dealing. GGU, collectively, is against Plaintiff and will keep him out by any means necessary.

Devoy also did not properly do his duty as he was unclear in his approach to speak with Plaintiff. Devoy contacted Plaintiff regarding Plaintiff's lawsuit on the same day the Dean filed his complaint against Plaintiff. Devoy wants to speak with Plaintiff to see if GGU acted in accordance with its own policies. He does not mention a complaint. In misleading Plaintiff to believe Devoy wanted to talk to Plaintiff regarding Plaintiff's lawsuit, Plaintiff did not get the opportunity to give his input on the situation before Devoy issued his disciplinary letter. Further more, the handbook states that Devoy must determine that there was a violation. In Devoy's disciplinary letter, he clearly states it was "more likely than not" that Plaintiff violated the code of conduct.

The Dean has shown intent to keep Plaintiff out by any means possible, regardless of its contractual obligations to Plaintiff.

All such actions by GGU has shown an overall unfair dealing with Plaintiff with an "us against you" mentality.

**FOURTH CAUSE OF ACTION**

**DEFAMATION/ FALSE FLIGHT**

On September 18, 2017, the Dean sent an email to the GGU community titled "Advisory: Recent Security Concerns." The email is in regards to what happened on September 15, 2017 when Plaintiff was intercepted by campus security and not allowed to attend class. After Plaintiff left, the school went into a "lock-down" mode. Exits were blocked off to make it a one way in one way out situation. Naturally, some students inquired to the Dean.

The email states that Plaintiff was requested by GGU to leave campus for an indefinite period. This is false. Plaintiff was ordered by the Dean not to return to school and would not allow Plaintiff to return at any time. Plaintiff was intercepted by campus security, taken to a private room, and ordered to leave under threat of being charged with trespassing. Plaintiff was never given another option.

The email states that Plaintiff has "been demonstrating behavioral issues at the University" and that Plaintiff left "without resistance." Plaintiff was punished for sending emails regarding how class time was being used and how the school was managed. Such emails were sent off campus. The Dean recognizes his suspension was for the emails and were done off campus. Therefore, the Dean's statement that Plaintiff displayed "behavioral issues at the University" is false. This false language gives the implication that Plaintiff is a menacing presence on campus and creates fear of him among the readers.

The email continues with stating that there will be "heightened safe and security procedures for the time being." The emails also states that GGU will communicate with Plaintiff while he remains off campus. Stating before that Plaintiff had behavioral issues on campus and ending with stating that there will be heightened security on campus further shed Plaintiff in a negative false light while showing the Dean in a positive light, like a protector. It implies Plaintiff is so dangerous that extra security is necessary. This, of course, is false as Plaintiff never had any issues with students in a physical presence nor did he threaten or harass anyone nor act in a way as the Dean implicates. In fact, it was Plaintiff who was harassed by another student to where the administration took no action about this. The Dean alleges that Plaintiff emailing his class was a behavioral issue at the University, however, Plaintiff can email his class from anywhere. By the Dean's logic, any time Plaintiff emails anyone from GGU, even if Plaintiff is not a student there or even located in California, he is showing behavioral issues at the University.

The email creates such an outrageous falsity regarding Plaintiff that it would be highly offensive to any reasonable person. Any reasonable person would be offended by being shown as a dangerous unstable person with behavioral issues. The offense is even greater when a person has not behaved in anyway to give such an impression.

The Dean knew or should have known that such a publication that was sent out to the GGU community would portray Plaintiff in a false light and damage his reputation and character. The Dean knew or should have known that such a publication would be highly offensive to any reasonable person. The Dean did not want Plaintiff to return to school and would do this by any means possible, as shown by his suspension and follow up letters. The Dean put Plaintiff on interim suspension abruptly and with disregard to student handbook procedure. The Dean did not have the authority to place Plaintiff on Interim suspension unilaterally. The Dean was angry at Plaintiff for communicating with other students about distractions and GGU's low bar passage rate and other

issues. The Dean, did not let Plaintiff return to school despite Plaintiff having no charges, pressured Plaintiff to withdraw, and sought for Plaintiff's expulsion when Plaintiff refused to withdraw. All of these actions show that the Dean had malicious intent behind his offensive defamatory email. The Dean knew that Plaintiff did not show any behavioral issues on campus.

GGU's actions have permanently damaged Plaintiff's reputation and Plaintiff has lost friends due to such actions. Students are fearful to associate with Plaintiff and as such, Plaintiff has been ostracized. This has caused Plaintiff sever depression low self-esteem.

### FIFTH CAUSE OF ACTION

### INVASION OF PRIVACY BY PUBLIC DISCLOSURE OF PRIVATE FACTS

The Dean's defamatory email disclosed Plaintiff's private situation to the whole GGU community. Although the email is false in its depiction of Plaintiff and other facts, it does expose the fact that Plaintiff has been told by GGU to remain off campus over issues the Dean was having with him.

Disclosure of such information by the Dean is highly offensive to any reasonable person. To expose such private matters to the community would humiliate any reasonable person, thus being offended by the one who disclosed such information.

Students have privacy rights that are protected by law. The Family Educational Rights and Privacy Act ("FERPA") protects students educational records. GGU claims to abide by FERPA but in disclosing Plaintiff's situation to the GGU community, GGU has disclosed Plaintiff's "educational record" as defined by FERPA. GGU also violated FERPA in that the Dean's email contained "personal identifying information" as defined by FERPA. Releasing such an educational record which contained personal identifying information about Plaintiff clearly violated Plaintiff's privacy rights.

The disclosure of such information by the Dean has no legitimate concern to the GGU community. There is no benefit to the GGU community by gaining knowledge of Plaintiff being kicked out of school under such circumstances.

**SIXTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

GGU's actions towards Plaintiff were outrageous and extreme. Plaintiff was harassed after about two weeks into the semester. A student who sat behind Plaintiff in his torts class told Plaintiff to put his hand down and not ask a question on another student's case. Plaintiff did not respond and kept his hand up. When Plaintiff was called by the professor, Plaintiff asked if he could ask a question on another student's case. After the professor responded affirmatively, the student cursed Plaintiff in an aggressive tone. Threatened and scared, Plaintiff immediately reported the incident to Bride and Koperski. Plaintiff was told to sit out that class and the matter would be investigated. Plaintiff was told that he would receive information before the next class. Plaintiff did not hear back from Koperski or Bride in due time and brought the issue back up with them. Plaintiff was told to change seats. Plaintiff had chose his seat because it was closest to the professor and was reluctant to move. Wanting to focus on class, Plaintiff moved. Plaintiff was asked again to move by the professor when the student next to Plaintiff's new seat objected to sitting next to Plaintiff. Plaintiff, scared and distracted, refused to move. At this point, it was arranged that the harasser would move and Plaintiff could move back to his original seat. Plaintiff was also informed that the harassing student has been spoken to and that there should be no other issues. The same day Plaintiff went back to his original seat, the harasser injected himself into a group study session Plaintiff was having with other classmates in the library. The harassing student joined the group uninvited and started interrupting Plaintiff when he spoke. Plaintiff left the group and informed Bride to where he did not hear back from Bride.

By GGU's reckless negligence, GGU made the camps a hostile environment for Plaintiff. Plaintiff was concerned about being attacked or further harassed. Plaintiff had anxiety and feared for his safety and GGU did not take any steps to investigate or keep the harasser away from Plaintiff. Plaintiff shares all of his classes with this student and was always afraid what the student might do to him. Especially after being further harassed in the library, after Bride insured that Plaintiff would have no more problems with the student.

GGU totally disregarded Plaintiff's emotional state as well as physical safety. Not only was Plaintiff harassed, but GGU did not even investigate the matter. The solution given by GGU, to change seats, was further demeaning to Plaintiff as he was the victim and shouldn't have to move from his chosen seat. GGU did not make the harasser move until another student complained of sitting next to Plaintiff. GGU eventually moved the harasser to accommodate the student who did not want to sit next to Plaintiff, not for Plaintiff. Furthermore, the harasser continued to harass Plaintiff and no action was taken by GGU. This disregard for Plaintiff's safety put Plaintiff in a very negative emotional state. Plaintiff felt scared, humiliated, embarrassed, disrespected, inferior, and disregarded.

The Dean's punishment of Plaintiff is extreme, harsh, and outrageous. The Dean unexpectedly put Plaintiff on an indefinite interim suspension. The Dean did not give any reason in his suspension letter and told Plaintiff to wait for further information. Plaintiff attempted numerous times to contact the Dean regarding the suspension to no avail. Plaintiff received an email a week later stating that Plaintiff would not be allowed to return to GGU and was pressured to withdraw. Should Plaintiff refuse to withdraw, the Dean would file a formal complaint against him. Plaintiff told the Dean that he wishes to return. Plaintiff informed the Dean that he had a wife and two young children to support. Plaintiff informed the Dean that his father was in his sixties. Plaintiff informed the Dean that he had given up his career and life in China to move his family back to the USA and

provide a better life for them by becoming a lawyer. The Dean knew that Plaintiff was passionate about the law and dreamed of becoming a lawyer. The Dean knew that Plaintiff had a family depending on him that were living on state benefits and family help.

The Dean disregarded Plaintiff's situation and vulnerability and abused his power in not budging from his position of keeping Plaintiff out of GGU. The Dean did not care about Plaintiff or his family and was angry about Plaintiff's emails. The Dean's abuse of power damaged Plaintiff's interest of becoming a lawyer and providing a better life for his family.

The Dean's actions towards Plaintiff has caused Plaintiff sever depression and anxiety. As stated above, Plaintiff sacrificed a lot to provide a better life for his family and it was all destroyed by the Dean for such a trivial matter. The Dean has embarrassed and humiliated him to the GGU community and Plaintiff's family. Plaintiff is also now fearful of speaking his mind and speaking on issues that he feels are wrong due to the Dean's actions.

## PRAYER

WHEREFORE, Plaintiff pray for relief as follows:

    a.  Damages in the amount of $100,000 for violation of California Education Code § 94367. Plaintiff's civil rights have been violated and should be compensated for this. Furthermore, it is in the public interest to penalize GGU in order to deter any further violations. Plaintiff also seeks declaratory relief, as granted under statute. In the case that Plaintiff is not accepted to another law school by July, 2018, Plaintiff seeks injunctive relief, as stated in the statute, by reinstatement.

    b.  Damages in the amount of $125,000 due to being delayed working as a lawyer for at least one year.

c. Damages to compensate for tuition at another law school. Plaintiff was awarded a merit scholarship that was worth $40,000 a year. This reduced Plaintiff's tuition to around $4,250 per semester. Should Plaintiff's tuition at a new law school exceed this amount, GGU will pay the excess.

d. Damages for breach of the covenant of good faith and fair dealing.

e. Damages for the emotional distress GGU has caused Plaintiff.

f. Costs paid by Plaintiff to relocate to San Francisco.

g. Immediate refund of Plaintiff's tuition and any other moneys paid to GGU by Plaintiff as well as the interest Plaintiff has paid on his student loan.

h. Damages in the case that GGU's actions have caused so much harm to Plaintiff that he would not be accepted to anther law school thus barring him from the legal profession.

i. Such other relief deemed just and proper.

DATED: May 14, 2018

_____
MORTEZA BENJAMN RAY
KARIMI
In Pro Per