1  Morteza Benjamin Ray Karimi
2  14004 Merseyside Dr.
   Pflugerville, Texas, 78660
3  512-969-0934
   nyccarini@hotmail.com

4  MORTEZA BENJAMIN RAY KARIMI, PRO SE

5

6

7                         UNITED STATES DISTRICT COURT

8                        NORTHERN DISTRICT OF CALIFORNIA

9                                   SAN FRANCISCO

10 MORTEZA BENJAMIN RAY KARIMI            )   Case No.: 3:17-cv-05702-JCS
                                          )
11                 Plaintiff,             )   **PLAINTIFF'S UPDATED CASE**
                                          )   **MANAGEMENT STATEMENT**
12         vs.                            )
                                          )
13 GOLDEN GATE SCHOOL OF LAW, DEAN        )
   ANTHONY NIEDWIECKI                     )
14                                        )   Judge:  Hon. Spero
                                          )   CMC Date:  June 6, 2018
15                 Defendants.            )   CMC Time:  2:00 p.m.
                                          )   Appearance:  By Telephone
16                                        )   Original Complaint filed:  October 3, 2017
                                          )   First Amended Complaint filed:  May 14, 2018
17                                        )
                                          )
18 _____

19

20

21

22

23

24

25

26

27

28

---

KARIMI v. GOLDEN GATE SCHOOL OF LAW and DEAN ANTHONY NIEDWIECKI in his official capacity. 3:
17-cv-05702-JCS. PLAINTIFF'S AMENDED CASE MANAGEMENT STATEMENT

## I. JURISDICTION & SERVICE

This court has subject-matter jurisdiction pursuant to 26 U.S.C. § 1332, diversity citizenship. There are no issues pending regarding personal jurisdiction. All parties have been served or have waived service.

## II. FACTS

Plaintiff filed his complaint on October 3, 2017 for breach of contract, defamation, and intentional infliction of emotional distress. Plaintiff amended his complaint to include: violation of California Education Code § 94367, defamation/ false light, invasion of privacy by public disclosure of private facts, and breach of covenant of good faith and fair dealing.

Plaintiff matriculated at Golden Gate School of Law ("GGU") on August 14, 2017. Plaintiff chose GGU because of a merit scholarship that would reduce his tuition to the amount of $40,000 for the school year.

Plaintiff was harassed in his torts class by a student who sat behind Plaintiff on August 18, 2017. Plaintiff informed the school of the incident to where to school recommended Plaintiff to switch seats. Plaintiff switched seats but was asked again to move at the request of another student. Plaintiff refused to move to where GGU had the student who harassed Plaintiff change seats so Plaintiff could return to his original seat. GGU stated that they had spoken with the students and there should not be any other problems for Plaintiff regarding this student. The student who harassed Plaintiff then joined a study group Plaintiff was part of in the school library after Plaintiff was told there should be no other issues. Plaintiff reported the incident to GGU.

On August 31, 2017, Plaintiff's torts professor canceled a class scheduled the next day. The class was canceled at the request of some students who wished for a longer labor day weekend. The students made the request to the professor at the beginning of the class to which the professor

1

refused to cancel. The professor then made a deal that if the whole class could successfully define a tort verbatim, he would cancel the class. The majority of the class failed the quiz but the professor canceled the class anyways.

Plaintiff objected to the cancellation to the professor and the administration. Plaintiff requested for there to be some kind of compensation for the canceled class but none was offered. Plaintiff then emailed his class stating his objection to the cancellation. Plaintiff also objected to students irrelevant personal stories being shared during class time. Plaintiff never addressed a person by name nor singled out any student. Plaintiff did not use threatening, aggressive, profane, or any other offensive language.

Later, students started to make announcements in class regarding their bids for student elections and student organizations during class time. Teachers would give students up to twenty minutes for such announcements and sometimes without the teachers consent. They would occur daily.

Plaintiff objected to these announcements to the administration and the class via email. Administration did not act and announcements continued. Plaintiff received hostile emails in return, some that were shared with the whole class.

Plaintiff had a meeting with Dean Anthony Niedwiecky ("dean") where he was told not to use a school system (TWEN) when emailing students. Plaintiff was told not to use TWEN to contact students. On the day of the suspension, before sending the suspension email to Plaintiff, the dean emailed Plaintiff telling him not to communicate with any classmates using TWEN or any other tools to email classmates. After Plaintiff read the dean's email, he replied and did not email his class. Other students responded to the whole class in response to Plaintiff's emails however Plaintiff was the only one punished.

On September 14, 2017, the dean sent an interim suspension letter to Plaintiff via email. The email did not give a reason to the suspension and the suspension was indefinite. The letter stated that Plaintiff was to only communicate with the dean via email. The letter states that should Plaintiff violate any of the dean's orders, he would be subject to disciplinary action up to and including dismissal. The dean sends another email to Plaintiff on September 18, 2017, stating that Plaintiff is not to communicate with any students at the law school.

On September 18, 2017, the dean sends an email to the GGU community in regards to Plaintiff. The email was title "ADVISORY: Recent Security Concerns." The email addresses a conversation Plaintiff had with San Francisco police outside of the school. The email states that Plaintiff had behavioral issues and was requested to leave campus. The email further explains that there will be more security on campus and the presence of security and police personal. Plaintiff's relationships with others have suffered as a result of this email sent by the dean.

After being suspended, Plaintiff was never allowed to return and was pressured to withdraw. The conditions to withdraw have changed numerous times. Initially, Plaintiff was only offered a tuition refund with a refusal for anything more. Plaintiff was then offered tuition plus other expenses (relocation costs, books, etc) that GGU calculated to $6,500. This would be granted with Plaintiff agreeing to a release of claims. GGU then offered the same as before except a release of claims would be excluded.

After refusing the offers, the dean filed an internal complaint against Plaintiff alleging that Plaintiff committed acts harmful to other people, failed to comply, and was disruptive. Plaintiff received the complaint on December 1, 2017.

The dean states that Plaintiff violated his restrictions by Plaintiff's communication other students and by communication with the dean himself. Plaintiff has the same classmates for each class. The dean does not state any specific communication by Plaintiff that violated student handbook policy, only that Plaintiff continued to communicate with other students which were against his instructions and that other students felt unsafe because of Plaintiff's communication regarding management of class time, to which the dean alleged that such speech was harmful to others.

### III.    LEGAL ISSUES

This action presents the following issues for determination:

- Whether the dean acted arbitrarily and capriciously against Plaintiff.  Regarding what is arbitrary and capricious, Courts decided, "its determination was arbitrary and capricious because the determination was not rationally based upon, and was contradicted by, the evidence." *Warner v. Elmira Coll.*, 59 A.D.3d 909, 873 N.Y.S.2d 381, 383 (2009). Courts held that, "Rationality is what is reviewed under both the substantial evidence rule and the arbitrary and capricious standard."*Pell v. Bd. of Ed. of Union Free Sch. Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester Cty.*, 34 N.Y.2d 222, 231, 313 N.E.2d 321, 325 (1974).

- Whether GGU breached contract by not following student handbook procedure which provides for a due process when they kicked Plaintiff out of school with no charges or reason given, and whether there was a legitimate reason to punish Plaintiff. In *Tedeschi v. Wagner,* 49 N.Y.2d 652 (1980), the Court recognized that the relationship between an institution and an individual is somewhat one-sided and that when a University makes a rule or guideline regarding discipline, it must be

substantially observed. Plaintiff's case is similar in that Tedeschi was disciplined without a hearing as stated in the handbook. Plaintiff effectively lost a whole year when the dean suspended him. Plaintiff was not given a hearing after demanding due process at the time he was suspended and was not offered one until about 3 months later, after commencing this lawsuit. The dean commenced a formal complaint two and a half months after suspending Plaintiff, after Plaintiff had filed this Complaint. Plaintiff has already been punished and lost a whole year regardless of the outcome of a hearing at this time. In denying Plaintiff a fair hearing or chance to return to school and salvage the remaining of the semester, Plaintiff was denied his rights as stated in the student handbook which demonstrates a punishment without due process or fairness. The dean did not even give a reason to the suspension or a time frame to resolve the issue in his suspension letter. In regards to giving a hearing to Plaintiff a this time, an opinion by Judge Gabrielli from *Tedeschi* parallels Plaintiff's reasoning that a hearing at this time is absurd. Did GGU abide by student handbook regarding how student organizations may advertise. Did GGU follow the student handbook in regards to who had authority in the disciplinary process.

- Did the dean act arbitrarily and capriciously in his discretion of punishing Plaintiff. Did the dean act arbitrarily and capriciously in filing a complaint which describes Plaintiff's code of conduct violations in relation to Plaintiff's actual actions/speech and speech. Does Plaintiff's actual/speech actions fit the definition of a violation of the codes the dean alleges were violated. Is GGU acting arbitrarily and capriciously in having giving Plaintiff due process three months after the suspension, after Plaintiff already has effectively been punished and demanded due process at the time of suspension. Is a disciplinary procedure warranted based off of the dean's

allegations in relation to Plaintiff's speech. Did GGU act arbitrarily and capriciously in not having an Assistant Director of the Office of Student Conduct and Professionalism on hand and involved at the onset of the dean's issues with Plaintiff, as stated in the student handbook.

- Whether the dean defamed Plaintiff by his email to the GGU community regarding Plaintiff pursuant to California Civil Code § 45 and whether such an email showed Plaintiff in a bad light.

- Whether the dean, by his punishment, status, and knowledge of Plaintiff's circumstances and dependency on his legal education, caused Plaintiff mental and emotional anguish.

- Whether GGU violated California Education Code § 94367 when it punished Plaintiff for his speech/communication. Plaintiff amended his complaint to include the statute and was instructed by the Court to clarify on the statute. Dkt # 57 p. 25. The California Legislature has intended the statute to mean that a student shall have the same right to exercise the right to free speech on or off campus. "In addition, as part of the law which enacted section 94367, the Legislature made findings and declarations regarding free speech in an uncodified statute. (Stats.1992, ch. 1363, § 4, pp. 6846–6847.) In section 4 of that uncodified statute, the Legislature also stated: 'It is the intent of the Legislature that a student shall have the same right to exercise his or right to free speech on campus as he or she enjoyed when off campus.'" (Stats.1992, ch. 1362, § 4, p. 6847.) *Yu v. Univ. of La Verne*, 196 Cal. App. 4th 779, 789, 126 Cal. Rptr. 3D 763, 771 (2011).

- In making specific rules tailored towards Plaintiff regarding who and how he may communicate, did GGU restrain and/or abridge Plaintiff's liberty of speech.

- By sharing the issues GGU was having with Plaintiff to the GGU community, did GGU violate Plaintiff's right to privacy.

- By punishing Plaintiff without due process, as stated in the student handbook, and delaying requested due process by Plaintiff after almost three months after being suspended and therefore already losing the year, did GGU violate the covenant of good faith and fair dealing. Were GGU's actions towards Plaintiff fair and showing of good faith. In not investigating Plaintiff's harassment claim and tailoring censorship rules specifically towards Plaintiff, did GGU act unfairly. Is GGU actig ni bad faith by retaining Plaintiff's tuition money, which was prepaid for a semester, and using it as a negotiating tool to force Plaintiff to withdraw. A semester is roughly four months, defendant only attended for one month.

## IV.   MOTIONS

Plaintiff filed a temporary restraining order an a preliminary injunction on December 8, 2017. Plaintiff intends to file another motion for a TRO and/or preliminary injunction under California Education Code § 94367 if he is not accepted to another law school.

## V.   AMENDMENT OF PLEADINGS

Plaintiff amended his Complaint and filed it on May 14, 2018.

## VI.   EVIDENCE OF PRESERVATION

Plaintiff has reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, and has conferred with Defendant pursuant to Fed. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. Plaintiff asked for recordings of September 15, 2017, specifically the time was at GGU. Defendant has not provided the recordings or given any evidence to show they do not exist or were erased.

VII. **DISCLOSURES**

The parties have agreed to serve the information required by Fed. R. P. 26.

Plaintiff requested a video recording and other communications that are relevant to Plaintiff's claim.. The information that could be available on the items requested for discovery can support Plaintiff's claim. Plaintiff expects to receive all internal communication regarding Plaintiff from Defendant as well as a security footage from September 15, 2017. Plaintiff also wants documentation of all events that took place that involved Plaintiff in anyway. For example: documentation of Plaintiff's harassment complaint to Defendant, documentation of allegations other students made towards Plaintiff that were communicated to the dean, and any other relevant documentation. Plaintiff also requested documents or any other information in regards to the date of appointment of Dan Devoy to the position of Assistant Director of the Office of Student Conduct, of which Plaintiff has not received at this time.

Defendant is in possession of all documents relevant to the Complaint as it is these documents that consist of this cause of action. Plaintiff has not been asked for any documents or information.

IX. **CLASS ACTION**

There is no proposed class at issue in this matter.

X.     RELATED CASES

There are no related cases.

XI.    RELIEF

Plaintiff was awarded a merit scholarship that would save him $40,000 dollars in tuition costs for the first year of law school. Plaintiff seeks this money due to Defendants breach of contract if Plaintiff returns to law school. Plaintiff would also accept GGU covering tuition at another law school, if Plaintiff is accepted, to the extent that the tuition at the new law school will be the same as it was a GGU.

Plaintiff will seek relief in the likelihood that he could be permanently denied entry into another law school and thus the legal profession. As a requirement of law school applications, Plaintiff must disclose any disciplinary action taken upon him from any school that he attended. Plaintiff has also been permanently damaged by way of reports that are sent to law schools along with applications. The report contains each school that an applicant has matriculated at. This causes Plaintiff to have to explain his odd situation to any school that he applies to. As Plaintiff is not a transfer student and only spent one month at GGU with not grades, it raises suspicion and creates more of a burden for Plaintiff than had he not attended GGU. For damages in the case Plaintiff is permanently barred from entering another law school and fulfilling his dream to become a lawyer due to Defendant's actions, Plaintiff calculates future lost wages of $2,000,000.

Plaintiff also seeks monetary relief for the emotional distress Defendant has caused him and continues to cause him by having Plaintiff take extra steps that he would otherwise not have to do in applying to other law schools, thus adding unwarranted stress. Plaintiff does not know how to calculate such damages.

Plaintiff also seeks damages for the defamatory statements made by Defendant.

9

Plaintiff also seeks damages for Defendant's violation of California Education Code § 94367.

Plaintiff also asks for relocation costs as well as costs applying to new law schools.

Plaintiff also seeks damages for Defendant disclosing private information.

Plaintiff seeks moneys lost as working as a lawyer for one year. Plaintiff will seek damages for each year he is out of law school until he returns. Plaintiff is actively applying to other schools.

Plaintiff also seeks relief for damages that the court finds just.

Plaintiff seeks immediate refund of tuition money.

## XII. SETTLEMENT AND ADR

The parties have not engaged in formal settlement discussions since the commencement of this action. The parties have conferred regarding ADR and have opted for mediation.

## XIII. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The parties have consented to a magistrate judge for all purposes.

## XIV. OTHER REFERENCES

None at this time.

## XV. NARROWING OF ISSUES

Plaintiff requested declaratory relief as given under California Education Code § 94367

## XVI. EXPEDITED TRIAL PROCEDURE

This case is not suitable for handling under the Expedited Trial Procedure of General Order No. 64 Attachment A.

### XVII. SCHEDULING

Plaintiff has not scheduling requests at this time.

### XVIII. TRIAL

The case will be tried by jury. Plaintiff might consider a bench trial in the future.

### XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Plaintiff will file a "Certificate of Interested Entities or Persons" concurrently.

### XX. PROFESSIONAL CONDUCT

Plaintiff has reviewed the Guidelines for Professional Conduct for the Northern District of California

DATED: June 1, 2018

_____
MORTEZA BENJAMIN RAY KARIMI
In Pro Per